IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHEILA SMOOT as mother and next friend of MECCA K. SCARVER, a minor, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 2:10-cv-361-TMP |
| KMART CORPORATION, ) ) | |
| Defendant. ) | |

MEMORANDUM OPINION

This cause is before the court on the defendant's motion for summary judgment filed November 15, 2010.  The motion has been briefed and is now under submission.  The parties have consented to the exercise to dispositive jurisdiction by the undersigned magistrate judge.  (Doc. 8).

Plaintiff filed suit in this matter on August 19, 2009, alleging a claim on behalf of her minor daughter for injuries sustained in a fall at defendant Kmart's Homewood, Alabama, store on August 13, 2007.[1]  The complaint, originally filed in the Circuit Court of Jefferson County, alleged three counts for negligence, wantonness, and negligent training and supervision.  The action was removed to this court on February 18, 2010, and no motion to remand was filed by plaintiff despite the apparent untimeliness of the removal.  Subject matter jurisdiction exists by virtue of diversity of citizenship and the requisite amount in controversy.  *See* 28 U.S.C. § 1332.

---

[1] Although not really material, the exact date of the incident is unclear.  The plaintiff, Sheila Smoot, testified that the accident occurred on August 19, 2007 (Smoot Depo, doc. 15-2, p. 20), but the injured minor testified that it was August 13, 2007 (Scarver Depo., doc. 15-3, pp. 99-100). Kmart makes no argument that the precise date of he incident is important to any issue raised.

Summary Judgment Standards of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting former Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court "shall" grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The evidence supporting a claim must be "substantial," *Marcus v. St. Paul Fire and Marine Ins. Co.*, 651 F.2d 379 (5th Cir., Unit B, 1981); a mere scintilla of evidence is not enough to create a genuine issue of fact. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004); *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1249-1250 (11th Cir. 2004). If the non-movant's evidence is so thoroughly discredited by the rest of the record evidence that no reasonable jury could accept it, the evidence fails to establish the existence of a genuine issue of fact requiring a jury determination. *See Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007) ("Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have reviewed the facts in the light depicted

by the videotape."); *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1290 n. 3 (11th Cir. 2009). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every *reasonable* inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

Summary Judgment Facts

Applying the foregoing standards to the evidence offered in support of and in opposition to the motion for summary judgment, and viewing the admissible evidence in a light favorable to the non-moving plaintiff, the following facts appear to be undisputed.

On August 13, 2007, Mecca Scarver was a thirteen-year-old student, living with her mother, Jefferson County Commissioner Sheila Smoot. That evening, close to 9:00 p.m., as the store was closing, Smoot and Scarver went to the Kmart store on Greensprings Highway, in Homewood,

Alabama, to do some shopping. They had been to store on prior occasions.[2] They used a shopping cart to collect their purchases and then went to a register lane to check out. Because it was near closing time, only one checkout lane was open, and it was manned by cashier Renee Hines. Although only one checkout lane was open, there were several others that were closed, as indicated by plastic chains hung across each closed lane. The store manager, Thelma Gardner, was in the rear of the store, but the "up-front supervisor," Carla Lawrence, was in the area of the checkout lanes near the front of the store. The checkout lanes that were not open for customer traffic were blocked by plastic chains obstructing each lane. The plastic chains were white or yellow in color, with a 5-inch by 12-inch red sign hanging in the middle of the chain with letters reading "Lane Closed." Each end of the chain in the closed lanes was mounted 26-inches above the floor on D-hooks on each side of the lane near the opening of the lane. When hung properly, the sign in the middle of each chain hung at knee level or slightly higher.

Kmart policy makes store safety a responsibility of all employees. Employees are trained regularly and daily on safety issues. Managers are required to "walk" the store periodically to look for safety hazards. A drooping or low-hanging chain across the entrance to a checkout lane is regarded as a safety hazard due to the risk of tripping. On the day of this incident, Gardner had "walked" the store at 5:00 p.m., and found no safety hazards. "Up-front supervisor" Lawrence also was alert to safety hazards, particularly in the checkout area, and she did not see a low-hanging chain.

---

[2] Smoot testified that the store was her "preferred site of shopping," although she also said that Scarver had been to the store with her only two or three times. (Smoot Depo. Doc. 15-2, p. 61).

As Smoot and Scarver were going through Hines's checkout lane, Smoot asked Scarver to go around the checkout lanes to get to the front side of their shopping cart to assist putting their purchases into the cart. Scarver then left the lane manned by Hines and went to a closed lane located to the left of Hines.[3] It was obvious that the lane was closed because no cashier was manning it, and she does not dispute that she knew it was closed. As Scarver walked through the closed lane, she tripped and fell face first to the floor, suffering injuries. Hines then commented Smoot, "She shouldn't have been running," to which Smoot replied, "She was not running, she was walking."[4]

Smoot and employees of the store came to assist Scarver, who was crying and screaming. Medical assistance was called on 911, and paramedics arrived within about five minutes. They treated Scarver at the scene, put her on a stretcher, and took her to an ambulance outside. As Smoot went to her car to follow the ambulance, she noticed her camera on the car seat, which she retrieved and took into the store to take photographs of the checkout lanes and the scene of the accident. Because the film in the camera had only one or two remaining exposures, Smoot went back to her car and got a second camera to take additional photographs. When finished, she returned to her car and followed the ambulance to the hospital, where Scarver was treated and released. None of the photographs have been offered in evidence, and Kmart contends they have not been produced in discovery despite several requests for them. Kmart also acknowledges that security video it would have maintained for the checkout area cannot be located.

---

[3] This orientation is from the perspective of customers looking at the checkout lanes as they enter them. Scarver went to the closed lane to the left of Hines's lane.

[4] Of course, the court accepts as true the version of events most favorable to the non-moving plaintiff, but the defendant offers a starkly different version. Kmart's evidence indicates that Scarver ran through the closed lane and tripped when she attempted to jump the chain at or about knee level.

Immediately following the accident, the chain across the entrance of the closed lane entered by Scarver was hanging low, near the floor. Smoot testified[5] that, although she did not see the chain before her daughter fell, after the fall the chain was "drooping" and "drooped across the floor." (Smoot Depo., doc. 15-2, pp. 52-53). She further explained that "[t]he sign [attached to the chain] was barely touching the floor. It was not laying flat, it was drooping across the aisle." The chain was not broken, and its ends were still attached to the D-hooks on either side of the lane. Scarver testified that the chain was readily visible. (Scarver Depo., doc. 15-3, pp. 112-113).

Discussion

In support of its motion for summary judgment, Kmart advances two principal arguments: the plaintiff cannot offer substantial evidence that the chain across the closed checkout lane was a defect or hazard because plaintiff has no evidence of the condition of the chain before the accident, and even if the chain was a hazard, it was open and obvious to any reasonable customer of the store. Kmart also contends that there is insufficient evidence of wantonness and no evidence of any failure to train or supervise a Kmart employee proximately related to this injury.

I. Premises Liability

Kmart seeks summary judgment on Count I of the complaint on the argument that plaintiff cannot present substantial evidence that the chain in the closed lane was hung improperly or was a

---

[5] It is certainly arguable that Scarver's similar testimony is inadmissible, although Kmart has not moved to strike it. She testified clearly that she did not see the chain before or after her fall, and that her only knowledge of it came from seeing photographs her mother took. (Scarver Depo, doc. 15-3, p. 109). This means that Scarver has no personal knowledge about the location of the chain; she is merely recounting what she has been shown in photographs, which she cannot authenticate. Nonetheless, for summary judgment purposes, the court accepts Smoot's testimony about the drooping chain.

a tripping hazard. Its principal basis for this argument is that both Smoot and Scarver admit that they did not see the chain prior to Scarver's fall, and, therefore, cannot testify about its condition or how it was hung when Scarver encountered it. On the other hand, two Kmart employees testified that the chain was not drooping or hung low. (*See* Lawrence Depo., doc. 15-4, pp. 52, 60; Hines Depo., doc. 15-4, p. 41). Plaintiff's only evidence on this is Smoot's testimony that, immediately *after* the fall, she saw the chain "drooping" lower than chains in other lanes and in a way that the "Lane Closed" sign on it was "barely touching the floor." Although the court finds that such a "drooping" chain can create a hazardous condition, it also concludes that the condition was "open and obvious," not requiring Kmart to warn patrons about it.

Alabama law provides the authority for consideration of this and plaintiff's other claims in this action. Recently, the Alabama Court of Civil Appeals had the occasion to summarize the law of premises liability in Alabama in *Sheikh v. Lakeshore Foundation*, ___ So. 3d ___, 2010 WL 4910860 (Ala. Civ. App., Dec. 3, 2010), a case in which the plaintiff alleged that he tripped over cables stretched across the floor of an exercise facility, injuring himself. That court stated the law, saying:

> The following rule regarding a invitor's duty to an invitee, articulated in *Lamson & Sessions Bolt Co. v. McCarty*, 234 Ala. 60, 63, 173 So. 388, 391 (1937), is well settled:
>
>> "This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of

> ordinary care, to avoid it. *Geis v. Tennessee Coal, Iron & R.R. Co.*, 143 Ala. 299, 39 So. 301 [ (1905) ].
>
> "This rule ... also includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.
>
> "In determining whether such care has been exercised, it is proper to consider the uses and purposes for which the property in question is primarily intended."

In *Lamson*, the court reversed a trial court's judgment finding a mechanic shop liable for negligence when a delivery man, who had previously made 3 or 4 deliveries to similar shops and was admittedly familiar with the environment, tripped over a hose on the shop's floor. The court stated:

> "'The duty to keep premises safe for invitees applies only to defects and conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.'"

*Lamson*, 234 Ala. at 63, 173 So. at 391 (quoting 45 C.I. § 244, P. 837). "[T]he focus of our premises liability law is not on the care that may have been exercised by the invitee ..., but on relieving a premises owner of a legal liability where an invitee knew of the danger that caused the injury or *should have observed* that danger through the exercise of reasonable care." *Ex parte Industrial Distribution Servs. Warehouse*, 709 So. 2d 16, 20–21 (Ala. 1997) (emphasis added). In *Jones Food Co. v. Shipman*, 981 So. 2d 355, 362 (Ala. 2006), the Alabama Supreme Court held that "an objective standard [is applied] to assess whether a hazard is open and obvious" and that, in applying that standard, "the question is whether the danger should have been observed, not whether in fact it was consciously appreciated." 981 So.2d at 362. That opinion further explained:

> "'[I]n order for a defendant-invitor in a premises-liability case to win a summary judgment or a judgment as a matter of law grounded on

9

>  the absence of a duty on the invitor to eliminate open and obvious
>  hazards or to warn the invitee about them, the record need not contain
>  undisputed evidence that the plaintiff-invitee consciously appreciated
>  the danger at the moment of the mishap.... [The Alabama Supreme]
>  Court has expressly rejected the notion that an invitor owes a duty to
>  eliminate open and obvious hazards or to warn the invitee about them
>  if the invitor "should anticipate the harm despite such knowledge or
>  obviousness." *Ex parte Gold Kist, Inc.*, 686 So. 2d 260, 261
>  (Ala.1996)...."'
>
> *Jones Food*, 981 So. 2d at 362–63 (quoting *Sessions v. Nonnenmann*, 842 So.2d 649,
> 653–54 (Ala. 2002)) (emphasis omitted); *see also Ex parte Gold Kist, Inc.*, supra
> (reversing various appellate decisions and expressly declining to adopt, as a correct
> statement of law, the notion that an invitor is liable to its invitees for physical harm
> caused to them by any known or obvious activity or condition on the land when the
> invitor "should anticipate the harm despite such knowledge or obviousness").

*Id.* at \_\_\_, 2010 WL 4910860, *3-4 (italics in original); *see also Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737 (Ala. 2009) (finding that boxes in the aisle of a store, over which the plaintiff tripped and fell, were "open and obvious" as a matter of law to any reasonable person, reversing a jury verdict for the plaintiff); *but see Cuevas v. W.E. Walker, Inc.*, 565 So. 2d 176 (Ala. 1990)(holding as a jury issue whether an electrical extension cord stretched across the aisle of store was a tripping hazard).

Assuming as true under the plaintiff's evidence that the yellow plastic link chain across the checkout lane entered by Scarver was "drooping" in such a way that the sign on the chain was "barely touching the ground," it appears that the lowest midpoint of the chain was approximately five inches above the floor.[6] From that point, the chain arced upward on each end to a height of 26 inches above the floor, where the ends of the chain attached to the D-hooks on each side of the lane. It was

---

[6] It was not disputed that the "Lane Closed" sign on the chain measured five inches in height by twelve inches wide.

yellow in color (according to Scarver) and held a five-inch by 12-inch red sign saying "Lane Closed." Scarver admits that the chain and sign were readily visible, but that she was looking "straight ahead."

Given these facts, this case is essentially indistinguishable from *Sheikh*. In that case, the plaintiff alleged that he tripped over cables stretched across the floor of an exercise facility he frequented and was familiar with. Although the plaintiff in that case testified that he had never before seen cables stretched across the floor, the Alabama Court of Civil Appeals noted that the determination whether a hazard is "open and obvious" is objective, turning not on whether the plaintiff subjectively perceived the hazard, but whether a reasonable person would have done so under the circumstances. "[A] reasonable person using Lakeshore's exercise facility would be expected to watch where he or she is going and to be aware of certain hazards that may exist below eye level over which he or she might trip, ...." *Sheikh v. Lakeshore Foundation*, ___ So. 3d ___, 2010 WL 4910860, *5 (Ala. Civ. App., Dec. 3, 2010). The court further analogized to *Paige v. Wal–Mart Stores, Inc.*, 638 So. 2d 4 (Ala.Civ.App. 1994), writing:

> Lakeshore had no duty to warn Sheikh of the cables over which he tripped. The facts of this case are similar to the facts of *Paige v. Wal–Mart Stores, Inc.*, 638 So. 2d 4 (Ala.Civ.App. 1994), in which we concluded that the defendant-invitor in that case had no duty to warn an invitee of an orange extension cord over which the invitee had claimed to have tripped because the presence of an orange cord on an off-white colored floor established the existence of a condition that was "open and obvious" as a matter of law.

*Id.* at *5.

The same circumstances point to the same conclusion in this case, that the chain across the closed aisle, even if only five inches above the floor, was open and obvious as a matter of law. Scarver knew that she was entering a closed lane; several other closed lanes were blocked by similar

yellow chains; the yellow chain and 5-inch by 12-inch red sign on it were readily visible; Scarver had no merchandise in her hands to obstruct her view of the lane; she was not, at that time, distracted by shopping or looking for merchandise; the store and lane were well-lit.  Under these circumstances, a reasonable shopper would have noticed the chain across the lane and would have understood the tripping hazard it presented.  Just as with the cables involved in *Sheikh*, a customer at Kmart, knowing the lane was closed, would be expected to look out for "hazards that may exist below eye level."  The fact that Scarver did not does not preclude a finding that the hazard was open and obvious as a matter of law.  The yellow chain and red sign were more open and obvious than the orange electrical cord found to be open and obvious in *Paige.*  The chain was raised and arced closer to eye level, and the sign was larger.  Knowing that the lane was closed, a reasonable customer would expect to encounter some obstacle in it, and would be on the look out for it.  Because this chain was open and obvious, Kmart was under no duty to warn her about it.

      Although not argued here by either party, the court feels the need to comment about the fact that the injured child, Mecca Scarver, was only thirteen years old at the time of her accident. This raises concerns that the "open and obvious hazard" doctrine may not apply to her because the doctrine rests on the idea that premises invitees are themselves required to exercise due care to avoid obvious hazards.  Negligence is simply the want of due care.  Under Alabama law, however, a child of thirteen is *prima facie* incapable of negligence.  "A child between the ages of 7 and 14 is *prima facie* incapable of contributory negligence."  *Tolbert v. Tolbert*, 903 So. 2d 103, 113 (Ala. 2004), quoting *Superskate, Inc. v. Nolen*, 641 So. 2d 231, 236 (Ala. 1994); *Savage Industries, Inc. v. Duke*,

598 So. 2d 856, 858 (Ala. 1992).[7]  The defendant may overcome that *prima facie* status by presenting evidence that the child possesses the intelligence, discretion, maturity, and sensitivity to the danger ordinarily attributable to a fourteen year old.  To hold a child to the standard of due care, "the Court must examine the following elements: (1) the intelligence of the child; (2) the capacity of the child to understand the potential danger of the hazard; (3) the child's actual knowledge of the danger; (4) the child's ability to exercise discretion; (5) the educational level of the child; (6) the maturity of the child; and (7) the age of the child." *Savage Industries, Inc. v. Duke By and Through Duke*, 598 So. 2d 856, 858 (Ala. 1992), quoting *Jones v. Power Cleaning Contractors*, 551 So. 2d 996, 999 (Ala. 1989).  Clearly these factors ordinarily will present factual issues requiring a jury determination.

The quandary presented to the court is that plaintiff never argued, as a basis for denying summary judgment, that the "open and obvious hazard" doctrine does not apply to her due to her age.  Although she refers to her age, she does not argue that, because she was thirteen at the time, the premises liability analysis and the application of the "open and obvious hazard" doctrine to it were any different from that ordinarily used for adult plaintiffs.  She might well have argued (but did not) that she and children like her are not subject to the "open and obvious hazard" doctrine because they

---

[7] Although the "open and obvious hazard" doctrine looks very much like contributory negligence, it really is not.  The affirmative defense of contributory negligence starts with the assumption that the defendant *was* negligent, but can assert the negligence of the plaintiff as a defense.  The "open and obvious hazard" doctrine states that a premises owner, aware of a hazardous condition, is under no duty to warn of that condition because it is so open and obvious that a reasonable person on the premises would perceive it and guard against it.  Rather than operate as an affirmative defense, the "open and obvious hazard" doctrine *relieves* the premises owner of a *duty* otherwise owed to invitees, that is, the duty to warn them about hazards on the premises.  Thus, unlike contributory negligence, when the "open and obvious hazard" doctrine applies, the premises owner has *not* been negligent in failing to warn an invitee of a hazard precisely because there is no *duty* to warn about open and obvious hazards.

are not held to the same standard of due care as adult invitees. Her summary judgment opposition brief is silent on this point.

The court is mindful of the recent admonition of the Eleventh Circuit in *Fils v. City of Aventura*, ___ F.3d ___, 2011 WL 3189627, at *8 (11th Cir., July 28, 2011):

> To prevail on a particular theory of liability, a party must present that argument to the district court. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1325 (11th Cir. 2000) (finding that the plaintiffs abandoned a claim because they did not present the argument to the district court). **Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties.** *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."); *cf. Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1352 (11th Cir.2009) ("'[A] court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the "hard judgment" that our adversary system demands.'" (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 190, 128 S. Ct. 1610, 1616, 170 L. Ed. 2d 574 (2008))).

*Id.*, ___ F.3d ___, ___, 2011 WL 3189627, at *8 [bolding added for emphasis]. The plain statement that "district courts cannot concoct or resurrect arguments neither made nor advanced by the parties," seems unambiguous, but the court has to express its trepidation whether the court of appeals really meant this statement to be as unambiguous as it seems. How far does the court's reliance on the parties to frame the issues and arguments go? In this case, for example, plaintiff argued that the "open and obvious hazard" doctrine does not apply because the she has presented evidence that the drooping chain was not open and obvious, a proposition this court rejects. She has not argued, however, that the "open and obvious hazard" doctrine does not apply because of her age. Although both propositions assert that the "open and obvious hazard" doctrine does not preclude her claim

against defendant, presumably, under the admonition in *Fils*, the court is not allowed to consider the effect of Scarver's age on the application of the doctrine; the court is not allowed to "cococt" the argument for her. If this is a misreading of the Eleventh Circuit's language, it won't be the first time. Defendant is entitled to summary judgment on Count I of the complaint.

B.  <u>Wantonness</u>

In order to establish a claim of wantonness, a plaintiff in a slip-and-fall case must show that the defendant invitor was actually aware of a hazard to invitees and consciously disregarded that hazard. Alabama law defines wantonness as follows:

> """Wantonness has been defined as the conscious doing of some act or the omission of some duty [while] under knowledge of existing conditions and while conscious that, from the doing of such act or the omission of such duty, injury will likely or probably result, and before a party can be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the result...."'
>
> "*Roberts v. Brown*, 384 So. 2d 1047, 1048 (Ala. 1980), quoting *Lewis v. Zell*, 279 Ala. 33, 36, 181 So. 2d 101 (1965)). In order to constitute wantonness, a failure to act must be accompanied by knowledge that someone is probably imperiled, and thus failure to act must be in reckless disregard of the consequences....""

*McDonald v. Lighami Development Co., L.L.C.*, 962 So. 2d 847, 851-852 (Ala. Civ. App. 2006) quoting *Berness v. Regency Square Associates, Ltd.*, 514 So. 2d 1346, 1349-50 (Ala. 1987).

The failure to detect a low-drooping yellow chain across a closed checkout lane is not wanton. Kmart has presented undisputed evidence that its policy is to require regular inspections of its stores for safety hazards, and that that policy was followed in this case. The manager of the store conducted regular "wallks" around the store looking for problems. The cashiers and "up-front

supervisor" were on alert for problems, including problems with the chains. Even taking as true plaintiff's evidence that the chain was drooping at the time of accident, there is no evidence about how long that condition existed or that any Kmart employee was aware of it or disregarded it as a safety hazard. Proof of deliberate indifference to the safety of their customers is required to show wantonness, and there simply is no evidence rising to the level of a conscious disregard of a safety hazard. Defendant's motion for summary judgment as to Count II also is due to be granted.

      C. <u>Negligent Training or Supervision</u>

Finally, plaintiff contends that Kmart negligently failed to train and supervise its employees with respect to the hazard created by low-hanging chains blocking checkout lanes. The essence of such a theory of recovery is that, notwithstanding knowledge of an employee's incompetence, the employer fails to properly train or supervise the employee, resulting in the employee's incompetence proximately causing injury to another. The elements of this tort include (1) knowledge by the employer of the employee's incompetence, *see Gilmer v. Crestview Memorial Funeral Home, Inc.*, 35 So. 3d 585, 596 (Ala. 2009); (2) actual incompetence by the employee; and (3) the incompetence proximately causing injury. The case law states the following:

> "In the master and servant relationship, the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge. It is incumbent on the party charging negligence to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master, or by showing them to be of such nature, character, and frequency that the master, in the exercise of due care must have had them brought to his notice."

*Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 987 (Ala. 1999), quoting *Thompson v. Havard*, 285 Ala. 718, 723, 235 So. 2d 853 (1970).  Furthermore, incompetence or negligence by an employee on a single occasion is not enough to put the employer on notice of the employee's potentially actionable incompetence.  *Joyner v. B & P Pest Control, Inc.*, 853 So. 2d 991 (Ala. Civ. App. 2002)("[A] single instance of negligence will not prove an employee incompetent ...; the most competent employee may be negligent.").

In this case, there is no evidence proving any of the elements of this claim.  The plaintiff has not identified a particular Kmart employee whose incompetence allegedly allowed the chain that tripped plaintiff to droop too low.  She has not identified prior occasions on which such an employee (or any employee) failed to correct the hazard of a low-hanging chain.  She has presented no evidence to show that Kmart was aware of a need to better train or supervise its employees concerning this hazard.  Nor has she disputed Kmart's evidence that its policy is to train all employees on the detection and correction of safety hazards, and that, in fact, it provides such training.  There is no substantial evidence that Kmart negligently ignored the dangerous incompetence of any employee with respect to correcting such a hazard.  Accordingly, Kmart is entitled to summary judgment on Count III of the complaint as well.

Conclusion

Based on the foregoing considerations, the court finds that defendant's motion for summary judgment is due to be granted. A separate order will be entered granting the motion and dismissing the case with prejudice.

DONE this 3rd day of August, 2011.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE